**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

RASUL MUHAMMAD, on behalf of himself and
all others similarly situated,

                Plaintiffs,

          v.

LA SENZA INTERNATIONAL, LLC,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No: 1:19-cv-08337

**FIRST AMENDED**
**CLASS ACTION COMPLAINT**
**FOR INJUNCTIVE AND**
**DECLARATORY RELIEF**

## INTRODUCTION

1. Plaintiff RASUL MUHAMMAD ("Plaintiff"), on behalf of himself and others similarly situated, asserts the following claims against Defendant LA SENZA INTERNATIONAL, LLC ("Defendant" or "LA SENZA") as follows.

2. Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.1 million who are blind, and according to the American Foundation for the Blind's 2016 report, approximately 260,000 visually impaired persons live in the State of Illinois.

3. "Being unable to access website puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013).

4. Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

5.      Plaintiff requires screen-reading software to read website content using his computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

6.      Plaintiff brings this civil rights action against Defendant to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

7.      By failing to make its Website available in a manner compatible with computer screen reader programs, LA SENZA, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services— all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

8.      Upon information and belief, because LA SENZA's Website has never been accessible and because LA SENZA does not have, and has never had, an adequate corporate policy that

is reasonably calculated to cause its Website to become and remain accessible, Plaintiff

invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

a.   that LA SENZA retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so the goods and services on them may be equally accessed and enjoyed by individuals with vision related disabilities;

b.   that LA SENZA work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis, including onsite training to create accessible content at the design and development stages;

c.   that LA SENZA work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether LA SENZA's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d.   that LA SENZA work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether LA SENZA's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

e.   that LA SENZA work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and tollfree phone number to report accessibility-related problems; and

f.   that Plaintiff, their counsel and its experts monitor Defendant's Website for up to two years after the Mutually Agreed Upon Consultant validates it is free of accessibility errors/violations to ensure LA SENZA has adopted and implemented adequate accessibility policies.

9.     Web-based technologies have features and content that are modified on a daily, and

in some instances, an hourly, basis, and a one time "fix" to an inaccessible website will not

cause the website to remain accessible without a corresponding change in corporate

policies related to those web-based technologies. To evaluate whether an inaccessible

website has been rendered accessible, and whether corporate policies related to web-based

technologies have been changed in a meaningful manner that will cause the website to

remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

11. LA SENZA purposefully targets and otherwise solicits business from Illinois residents through its Website. Because of this targeting, it is not unusual for LA SENZA to conduct business with Illinois residents. In fact, the opposite is true: LA SENZA clearly does business over the Internet with Illinois residents, having entered into contracts with Illinois residents that involve the knowing and repeated transmission of computer files over the Internet. See *Gniewkowski v. Lettuce Entertain You*, Order, ECF No. 123 (W.D. Pa Apr. 25, 2017) clarified by Order of Court, ECF No. 169 (W.D. Pa. June 22, 2017) (Judge Schwab) (The court exercised personal jurisdiction over an out-of-forum defendant for claims its website is inaccessible to a visually disabled resident of the forum state.); see also *Access Now Inc. v. Otter Products, LLC*, Case No. 1:17-cv-10967-PBS (D.Mass. Dec. 4, 2017) (exercising personal jurisdiction over forum-based plaintiff's website accessibility claims against out-of-forum website operator).

12. Venue in this District is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff claims occurred.

13. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

14. Plaintiff, at all relevant times, is and was a resident of Chicago, Illinois.

15. Defendant is and was at all relevant times a Delaware Corporation doing business in Chicago, including its location at 728 Orland Square Drive, Orland Park, IL 60462.

16. Defendant's physical location, its Website and the goods and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

## NATURE OF ACTION

17. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

18. In today's tech-savvy world, blind and visually impaired people have the ability to access website using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet. Unless website are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access website, and the information, products, goods and contained thereon.

19. Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-

reading software program available for a Windows computer. Another popular screen-reading software program is NonVisual Desktop Access "NVDA." Plaintiff uses NVDA.

20. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the visually-impaired user is unable to access the same content available to sighted users.

21. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making website accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their website are accessible.

## STATEMENT OF FACTS

22. Defendant is a women's clothing company that owns and operates its Website, www.lasenza.com, offering features which should allow all consumers to access the goods and services which it offers throughout the United States, including Illinois.

23. Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet.

24. Plaintiff has attempted to use Defendant's Website at least once in the past. Unfortunately, because of LA SENZA's failure to build its Website in a manner that is compatible with screen reader programs, he is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use. For example:

    a. Many features on the Website lacks alt. text, which is the invisible code embedded beneath a graphical image.

b.  Many features on the Website also fail to Add a label element or title attribute for each field. This is a problem for the visually impaired because the screen reader fails to communicate the purpose of the page element. It also leads to the user not being able to understand what he or she is expected to insert into the subject field.

c.  The Website also contains a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered.

25.  As a result of visiting LA SENZA's Website and from investigations performed on his behalf, Plaintiff is aware the Website include at least the following additional barriers blocking his full and equal use:

a.  The Website does not provide a text equivalent for every non-text element;

b.  The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

c.  Web pages lack titles that describe their topic or purpose;

d.  Headings and labels do not describe topic or purpose;

e.  Keyboard user interfaces lack a mode of operation where the keyboard focus indicator is visible;

f.  The default human language of each web page cannot be programmatically determined;

g.  The human language of each passage or phrase in the content cannot be programmatically determined;

h. Labels or instructions are not always provided when content requires user input;

i. Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

j. A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

k. A correct reading sequence is not provided on pages where the sequence in which content is presented affects its meaning;

l. In content implemented using markup languages, elements do not always have complete start and end tags, are not nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

m. The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

26. These barriers, and others, deny Plaintiff full and equal access to all of the services the Website offers, and now deter him from attempting to use the Website and/or visit LA SENZA. Still, Plaintiff would like to, and intends to, attempt to access LA SENZA's Website in the future to research the services the Website offers, or to test the Website for compliance with the ADA.

27. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's Website, and the numerous goods and services and benefits offered to the public through the Website.

-8-

28.     Through his attempts to use the Website, Plaintiff has actual knowledge of the access
        barriers that make these services inaccessible and independently unusable by blind and
        visually-impaired people.

29.     Though LA SENZA may have centralized policies regarding the maintenance and
        operation of its Website, upon and information and belief, LA SENZA has never had a plan
        or policy that is reasonably calculated to make its Website fully accessible to, and
        independently usable by, individuals with vision related disabilities. As a result, the
        complained of access barriers are permanent in nature and likely to persist.

30.     The law requires that LA SENZA reasonably accommodate Plaintiff's disabilities by
        removing these existing access barriers. Removal of the barriers identified above is readily
        achievable and may be carried out without much difficulty or expense.

31.     Plaintiff's above request for injunctive relief is consistent with the work performed by the
        United States Department of Justice, Department of Transportation, and U.S. Architectural
        and Transportation Barriers Compliance Board (the "Access Board"), all of whom have
        relied upon or mandated that the public-facing pages of website complies with an
        international compliance standard known as Web Content Accessibility Guidelines version
        2.1 AA ("WCAG 2.1 AA"), which is published by an independent third party known as
        the Worldwide Web Consortium ("W3C").

32.     Plaintiff and the Class have been, and in the absence of an injunction will continue to be,
        injured by LA SENZA's failure to provide its online content and services in a manner that
        is compatible with screen reader technology.

33.     LA SENZA has long known that screen reader technology is necessary for individuals with

        visual disabilities to access its online content and services, and that it is legally responsible

        for providing the same in a manner that is compatible with these auxiliary aids.

34.     Indeed, the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest

        before the United States District Court for the District of Massachusetts that it has been a

        "longstanding position" of the Department of Justice "that the ADA applies to website of

        public accommodations." See National Association of the Deaf v. Massachusetts Institute

        of Technology, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion

        to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest");

        see also National Association of the Deaf. v. Harvard University, No. 3:15-cv-30023-

        MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass.

        Jun. 25, 2015) ("Harvard Statement of Interest").

35.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In

        relevant part, the ADA requires:

        In the case of violations of . . . this title, injunctive relief shall include an order to alter
        facilities to make such facilities readily accessible to and usable by individuals with
        disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . .
        modification of a policy . . .

42 U.S.C. § 12188(a)(2).

36.     There is no DOJ administrative proceeding that could provide Plaintiff with Title III

        injunctive relief.

37.     While DOJ has rulemaking authority and can bring enforcement actions in court, Congress

        has not authorized it to provide an adjudicative administrative process to provide Plaintiff

        with relief.

38. Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of matters.

39. Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, e.g. (a) whether LA SENZA offers content and services on its Website, and (b) whether Plaintiff can access the content and services.

40. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website, violating their rights.

## CLASS ACTION ALLEGATIONS

41. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

42. Common questions of law and fact exist amongst Class, including:

      a. Whether Defendant's Website is a "public accommodation" under the ADA;

      b. Whether Defendant's Website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA.

43. Plaintiff's claims are typical of the Class. The Class, like Plaintiff, are visually impaired or otherwise blind, and claim that Defendant has violated the ADA by failing to remove access barriers on its Website so as to be independently accessible to the Class.

44. Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members.

45. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to the Class as a whole.

46. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

47. Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits throughout the United States.

## FIRST CAUSE OF ACTION
### VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

48. Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

49. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

50.     Defendant's Website is a public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

51.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

52.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

53.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

[A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

54.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. § 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been

denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has not been provided any reasonable accommodation to those services. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

55.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

## SECOND CAUSE OF ACTION
## DECLARATORY RELIEF

56.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its Website, which Defendant owns, operations and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq*. prohibiting discrimination against the blind.

58.     A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

59.     A Declaratory Judgment that at the commencement of this action LA SENZA was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that LA SENZA took no action that was

reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

60. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause it to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in paragraph 8 above;

61. An award of costs and expenses of this action;

62. Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, including costs of monitoring Defendant's compliance with the judgment (see *Hadix v. Johnson*, 143 F.3d 246 (6th Cir. 1998), aff'd in part, rev'd in part, 527 U.S. 343 (1999); *Jenkins v. Missouri*, 127 F.3d 709 (8th Cir. 1997); W*alker v. U.S. Dep't of Hous. & Urban Dev*., 99 F.3d 761 (5th Cir. 1996); *Stewart v. Gates*, 987 F.2d 1450, 1452 (9th Cir. 1993) (district court should permit compensation for the post judgment monitoring efforts by the plaintiff's counsel that are "useful and necessary to ensure compliance with the court's orders"); *Garrity v. Sununu*, 752 F.2d 727, 738-39 (1st Cir. 1984); *Adams v. Mathis*, 752 F.2d 553 (11th Cir. 1985); *Willie M. v. Hunt*, 732 F.2d 383, 385, 387 (4th Cir. 1984); *Bond v. Stanton*, 630 F.2d 1231, 1233-34 (7th Cir. 1980); Nor*thcross v. Board of Educ*., 611 F.2d 624, 637 (6th Cir. 1979) ("Services devoted to reasonable monitoring of the court's decrees, both to ensure full compliance and to ensure that the plan is indeed

working…are essential to the long-term success of the plaintiff's suit.") (citing 3rd Circuit's support for District Court's award of prospective fees to plaintiff's counsel);

63.     Any prevailing plaintiff that enforces the ADA can utilize its fee shifting statute. 42 USC § 12205. Congress intended it to parallel the Civil Rights Attorney's Fees Awards Act. 42 USC § 1988; H.R. REP. 101-485, 73. Given this intention, precedent from this Circuit and the United States Supreme Court make it clear that plaintiffs should "ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Dawson v. Pastrick*, 600 F.2d 70, 79 (7th Cir. 1979) quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

64.     Specifically, 42 USC § 12205 provides that Courts have the discretion to award attorney's fees, litigation expenses, and costs for the prevailing party in any action under the ADA. The ADA's legislative history solidifies that under 42 USC § 12205 Congress "intends that the attorney's fee provision be interpreted in a manner consistent with the Civil Rights Attorney's Fees Act, including that statute's definition of prevailing party, as construed by the Supreme Court." H.R. REP. 101-485, 73. The language of the ADA fee shifting provision parallels the Civil Rights Attorney's Fees Awards Act, which provides "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee." 42 U.S.C. § 1988(b). The Court's discretion under these fee shifting provisions to deliver an award of attorney's fees departs from its typical, broad form.

65.     While reversing a District Court decision that refused attorney's fees, the 7th Circuit determined with respect to the Civil Rights Attorney's Fees Awards Act that:

> "[T]he [legislative history] of the provision makes it clear that the trial court's discretion is narrow . . . a party seeking to enforce the rights protected by the statutes . . . if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'"

*Dawson*, 600 F.2d at 79 quoting *Newman*, 390 U.S. at 402. "Thus, 'a prevailing plaintiff should receive fees (under the Act) almost as a matter of course.'" *Bond v. Stanton*, 630 F.2d 1231, 1233 (7th Cir. 1980) quoting *Davis v. Murphy*, 587 F.2d 362, 364 (7th Cir. 1978) and *Dawson*, 600 F.2d at 79. "The Supreme Court has previously recognized that Congressional policy favors private enforcement of civil rights acts and mandates a liberal construction of attorney's fee statutes." *Krislov v. Rednour*, 97 F. Supp. 2d 862, 866–67 (N.D. Ill. 2000). The analysis with respect to the ADA is identical because, as the Supreme Court noted in *Newman*:

> When a plaintiff brings an action . . . he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees—not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by . . . discrimination to seek judicial relief . . . .

390 U.S. at 402. *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (stating injunctive relief only remedy available to individual plaintiff under ADA).

66.     An order certifying the Class under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel; and

67.     Such other and further relief as this Court deems just and proper.

Dated:     Chicago, Illinois
           January 14, 2020

KRAMER INJURY LAW LLC

By: */s/ R. Joseph Kramer*
R. Joseph Kramer, Esq.
Joe@rjklawyer.com
225 W. Washington Street, Suite 2200
Chicago, IL 60606
Tel: (312) 775-1012
Fax: (312) 626-2408
ATTORNEYS FOR PLAINTIFF